## Francis Welch, Administrator, *versus* Charles Bradbury.

In 1816, an agreement was entered into between the defendant, who was an insurance broker, and the administrator of an underwriter, setting forth that an account existed between the parties relating to matters of insurance done by the underwriter in the office of the defendant, and including a large number of unsettled losses, premiums and *salvages ;* that the defendant agreed to allow the administrator the sum of $1100, in full for the balance of such account, and to assume upon himself the settlement and payment of all claims for partial and total losses and return premiums, with one exception specified ; and that it was mutually agreed, " that all sums of money which the defendant has received or may here after collect and receive, for and on account of premiums due to the administrator for or on account of any matter or thing arising out of said insurance account is hereby assigned to and shall be the property of the defendant, and that he shall not be held to account for the same; but all charges and expenses in and about the same are to be borne and paid by the defendant." In 1833, a sum of money was awarded, under a treaty between the United States and Denmark, to the representatives of the underwriter, on account of his having underwritten various policies of insurance on vessels illegally captured under the authority of the government of Denmark, which policies were included in the account mentioned in the agreement. It was *held*, that the sum so awarded was strictly *salvage ;* and that it passed to the defendant by virtue of the agreement, whether the claims were particularly contemplated by the parties to the agreement or not.

By an agreed statement of facts, it appeared, that the defendant, for several years, was an insurance broker, and kept a private insurance office in Boston ; that William Stackpole, senior, the plaintiff's intestate, underwrote a large number of the policies opened in such office, and was credited by the defendant with his proportion of the premiums, and charged with his proportion of the losses ; that in 1813, the intestate died and his son, William Stackpole, was appointed administrator of his estate ; that on July 29, 1816, the administrator and the defendant entered into the following agreement under seal :

" Memorandum of an agreement between said William Stackpole, administrator on the estate of his late father, William Stackpole, and Charles Bradbury, all of Boston. Whereas an account exists between said parties relating to matter of insurance done and transacted by the late William Stackpole in the office kept by said Bradbury, and there being a number of unsettled losses, premiums and salvages in said

account, now this instrument witnesseth, that the parties have agreed to adjust and compromise the said account in manner following, to wit:

"First. The said Bradbury agrees to allow and pay to said Stackpole, as administrator, the sum of eleven hundred dollars in full for the balance of said underwriting account, and as claims for losses and return premiums have already arisen, and may hereafter arise on policies of insurance underwritten and subscribed by said William Stackpole in said Bradbury's office, the said Bradbury, for himself, his heirs, executors and administrators, hereby assumes upon himself the settlement and payment of all claims of any and all partial and total losses and all return premiums, and hereby engages to indemnify and protect the said Stackpole, his heirs, executors and administrators, now and at all times hereafter, from all loss, damage and expense, for, by reason or on account of the same, save and except only for said William Stackpole's subscription on policy No. 3079, being on cargo, ship Volant, from France for account of Messrs. N. H. & J. Haven of Portsmouth, which is to be settled by said Stackpole; that is, if any loss shall be recovered thereon, he is to pay it, and if the premium note or any part of it, is recovered and received, said Bradbury is to pay or account to said Stackpole therefor

"Second. The said Stackpole acknowledges to have received of said Bradbury the beforementioned sum of eleven hundred dollars, and does hereby discharge said Bradbury from all demands, and does receive the said sum in full for the balance of his said father's insurance account, excepting the policy No. 3079, as aforesaid; and it is further mutually agreed by said parties, that all sums of money which the said Bradbury has received, or may hereafter collect and receive, for and on account of premiums due to said Stackpole for or on account of any matter or thing arising out of said insurance account, is hereby assigned to and shall be the property of said Bradbury; and that he shall not be held to account for the same; but all charges and expenses in and about the same, are to be borne and paid by said Bradbury."

In or about the year 1821, William Stackpole, the son, died, and the plaintiff was appointed administrator of the estate of the father.

In April 1833, the defendant received of the commissioners for adjusting claims under the treaty between the United States and Denmark, the sum of $376·62, being the amount allowed by them to the representatives of the intestate, on account of his having underwritten various policies of insurance at the office kept by the defendant. These policies were included in the account mentioned in the agreement.

Before bringing this action, the plaintiff demanded of the defendant the amount so received by him.

If, in the opinion of the Court, the plaintiff was entitled to recover, the defendant was to be defaulted, and judgment entered for such sum as the Court should order ; otherwise the plaintiff was to be nonsuited.

*Greenleaf, W. J. Hubbard,* and *Watts,* for the plaintiff, cited 6 Petersd. Abr. 206 ; Chitty on Contr. 20 ; *Tucker* v. *Clisby,* 12 Pick. 22 ; *Comegys* v. *Vasse,* 1 Peters's Sup. Court R. 193, 217.

*S. Hubbard* and *Atwood,* for the defendant, as to the authority of an administrator to make such a settlement of the account and to assign the claims in question, cited *Farnam* v. *Brooks,* 9 Pick. 223, note; to the point, that the claims against the Danish government were strictly in the nature of "salvage" and were within the general scope and purpose of the agreement, 1 Phillips on Ins. 459 *et seq.*; *Farnam* v. *Brooks,* 9 Pick. 239, 241 ; *Randal* v. *Cockran,* 1 Ves. sen. 98 ; *Gracie* v. *New York Ins. Co.* 8 Johns. R. 287; *Appleton* v. *Crowninshield,* 8 Mass. R. 340; *Heard* v. *Bradford,* 4 Mass. R. 326 ; Weskett, 499 ; and to the point, that the claims passed by the agreement to the defendant, whether they were in the minds of the parties or not, *Farnam* v. *Brooks,* 9 Pick. 212.

SHAW C. J. delivered the opinion of the Court. It is *March 30th* correctly stated by the counsel on both sides, that the decision of this cause must depend upon the construction of the agreement, made by the defendant with a prior administrator of the estate of the plaintiff's intestate. Nor are the rules of construction a subject of controversy, it being conceded, that in expounding all contracts, the intent of the parties must govern, and that in ascertaining that intent, it is proper to

Welch
v.
Bradbury.

into consideration the situation and circumstances under which the parties enter into their contract, the purpose and subject matter of the contract, and that every clause and word of the whole instrument may be resorted to, in order to determine the true construction of any particular clause.

In examining the contract with these considerations in view, the Court are of opinion, that it was the intention of Stackpole to assign and transfer all the profits and benefits which might arise out of the insurance account, which was the subject matter of the contract, with the special exception of what might be either payable or receivable on account of the insurance of the Volant.

The engagements were reciprocal; the defendant undertook to pay all losses, total or partial, which might occur and be demandable on any policy underwritten by Stackpole, together with all return premiums, and expenses of settling accounts and collecting salvages, and to indemnify the estate. This embraces every charge which could come against the estate of Stackpole, as such underwriter. We think it equally clear, that it was the intent of the parties to transfer to Bradbury, with the exception named, all premiums, salvages and profits which should arise from the same insurance account.

The general purpose was, as Stackpole the elder had been some time dead, and his estate in the process of settlement, to bring it to a close and to substitute a certain sum of money instead of an uncertain, contingent class of claims, subject to deductions and counterclaims of uncertain amount. The subject matter of the contract is set forth in a recital, stating that an account exists between said parties relating to matter of insurance, done and transacted &c., and there being a number of unsettled losses, premiums and salvages, in said account &c. Now we think the subject matter of the contract embraced the whole insurance business, transacted by Stackpole, the elder, in Bradbury's office. But if we use the term in a more restricted sense, as insisted on by the counsel for the plaintiff, as embracing matter entered in the books of the defendant, as insurance broker, and which, it is urged, must be supposed to have been before the parties for

adjustment, we think the result must be the same, inasmuch as every policy underwritten was on the books, and as such, entered into the account and was before them. And the very policies, in respect to which salvage has been recovered in consequence of the Danish treaty, were included in this account. If by "account" the plaintiff's counsel intend those items which could be then brought into an account as debit and credit, that is, items in relation to transactions closed, and where the items of debt and credit were then ascertained and reduced to certainty, so as to be carried to account, it would contradict the whole tenor of that agreement. The agreement obviously looked to contingencies and uncertainties, and its design was to allow a sum certain to the administrator of the estate of the deceased underwriter, and throw these contingencies, for profit or loss, on the surviving broker, the defendant.

By a critical construction of the clause by which outstanding claims due to the underwriter, are transferred to the defendant, they would be confined to such premiums only as may be received, making the words, "for or on account of any matter or thing arising out of said insurance account," qualify the word *premiums*, instead of extending the contingent claims granted, to other subjects. But we think the clause will quite as well, if not better, bear a more enlarged construction standing by itself; but taking it in connexion with other clauses, it requires a more enlarged construction. The construction in question would exclude ordinary claims for salvage, expressly contemplated and stated in the recital, and manifestly intended to be assigned. The general object of the compromise being to substitute a certain sum, for contingent claims, it would be extraordinary to hold, that the matter yielded in exchange for a sum certain was not the remote and contingent claims for salvage, but only the certain debts due on notes of hand, absolutely payable by express contract. It rather appears to us, that the more remote and contingent and uncertain the claims of the deceased underwriter, the more certain it is, that they were intended to be transferred to the active and living assignee, who might look after them, and perhaps realize something from them.

Welch<br><i>v.</i><br>Bradbury.

Welch
*v.*
Bradbury.

Then the question arises, whether the money to be recovered in virtue of a treaty with a foreign sovereign for indemnity, for injuries done to our citizens, can be properly denom inated salvage. Of this we think there can be no doubt. It has often been held, that this right follows the property; that when the injury is to a vessel or cargo, it vests in the owners, and that by an abandonment which would vest the property in the assurers, this claim to indemnity passes with it. It properly and strictly therefore comes under the name of salvage. In this very case, the award was made to Stackpole as underwriter, in consequence of the abandonments of the assured, in whose place he stood. The sums of money thus received are strictly salvage.

It is stated, that it is not the ordinary duty of the insurance broker to apply to foreign governments for indemnity, and that he has no fund to enable him to do it. The same may be said in all other cases, where claims for salvage are to be pursued, often at great expense and hazard. But here, in virtue of the assignment, new powers were vested in the defendant, as assignee; and all such claims were, by the terms of the assignment, to be prosecuted at his own expense.

That these claims were not particularly contemplated and so not included in the assignment, is a ground of objection precisely similar to that taken in *Brooks* v. *Farnam*, 9 Pick 212, in which it was held that by like general words, comprehensive enough to include such claims of salvage, they would pass, whether in the mind of the contracting parties, at the time, or not.

*Plaintiff nonsuit.*